REVISED July 20, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30667
_____


TEX MORRIS; CINDY SAGRERA MORRIS,

                                        Plaintiffs-Appellants,

                        versus

COVAN WORLD WIDE MOVING, INCORPORATED;
COLEMAN AMERICAN MOVING SERVICES,
INCORPORATED,

                                        Defendants-Appellees.
_____

        Appeal from the United States District Court for the
                    Western District of Louisiana
_____
                         July 8, 1998

Before WISDOM, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        Moving from Virginia to Louisiana, Tex and Cindy Morris lost
most of their furniture and belongings when a fire destroyed the
truck transporting their property.  The Morrises sued the moving
company, seeking a greater recovery than statutory law--the Carmack
Amendment to the Interstate Commerce Act--allows them.  Thus, the
primary issue in this case is whether federal common law remedies
are available in actions against common carriers for the loss of
goods shipped under a receipt or bill of lading within the scope of
the Carmack Amendment.  The case further presents the question
whether summary judgment was inappropriate because there existed a

genuine issue of material fact as to the value of the plaintiffs' goods lost while in the carrier's custody.  We hold that federal common law remedies are preempted by the Carmack Amendment.  We also hold, however, that fact issues remain as to the value of lost goods.  We therefore affirm in part, reverse in part, and remand.

I

On January 9, 1995, the Morrises entered into a contract with Covan Worldwide Moving, Inc. and Coleman American Moving Services, Inc. (collectively, "Covan") to transport their household goods from Dale City, Virginia, to Baton Rouge, Louisiana.  In the process, the Morrises completed an "Estimate and Order for Service" form in which they provided Covan with estimates as to what property would be shipped and its value.  The Morrises also filled out a "Shipment Protection Plan" in which Covan offered three levels of coverage.  The Morrises requested the maximum, "full value" coverage for their property.[1]  Finally, the Morrises signed a bill of lading in which they declared the total value of their shipped property to be $29,000.00.  The total weight listed on the bill of lading was 7,860 pounds.

On January 10, 1995, the Morrises' property was loaded for shipment to Baton Rouge.  During the trip, the tractor-trailer

---

[1]The Morrises further chose as part of the protection plan to make an "Extraordinary (Unusual) Value Article Declaration," which, according to the plan, entitled them to declare the values of certain higher priced items.  Although the plan states that a special inventory form would be used for such declarations, none appears in the record.

caught fire. The blaze destroyed nearly everything. Covan nevertheless delivered some of the property and charged the Morrises for 4429 pounds of freight. The Morrises disputed the charge, contending that all of the property delivered was effectively destroyed by the fire and attending smoke and water. Covan adjusted its figures to reflect a delivery of 2658 pounds of freight and ultimately paid the Morrises $26,498.38 of the declared value of $29,000.00.

The Morrises were dissatisfied with the settlement offer and brought this action in the district court. They alleged that the actual value of their property was $54,312.00 and that they had suffered an additional $60,000.00 in punitive damages, lost wages, and mental anguish resulting from the destruction of their belongings. In all, the Morrises sought $87,813.62 in damages, the difference between their actual losses and the amount Covan had already paid them, as well as attorney's fees.

The Morrises submitted timely discovery requests to Covan seeking, among other things, a copy of the tariff under which Covan was operating. Before any responses were received, however, Covan moved for partial summary judgment. Covan argued that the action fell within the scope of the Carmack Amendment and that the Amendment limited the Morrises' recovery to the value of property declared in the bill of lading--$29,000.00.

The district court granted Covan's motion and then dismissed the entire lawsuit. Based on the bill of lading and Covan's tariff

(which had been attached to Covan's summary judgment reply brief, but not provided to the Morrises in response to their discovery requests), the court determined that the action was governed by the Carmack Amendment and, thus, that Covan was entitled to limit its liability to the declared value of the property. Accordingly, the court dismissed all claims based on state or federal common law. Also, because the alleged loss occurred before the effective date of the recently added provisions permitting recovery of attorney's fees under the Carmack Amendment, the court held that the Morrises were not entitled to attorney's fees. Finally, and without expressly addressing the Morrises' claim that they were nevertheless entitled to the unpaid balance on their $29,000.00 declaration (amounting to $2501.62), the court dismissed the remainder of the case. The Morrises appealed.

II

We review the district court's grant of summary judgment de novo. Exxon Corp. v. Baton Rouge Oil, 77 F.3d 850, 853 (5th Cir. 1996). The court will not weigh the evidence or evaluate the credibility of witnesses; further, all justifiable inferences will be made in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of

4

evidence necessary to support the nonmoving party's case. Lavespere v. Niagare Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).

Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. Id. In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. Anderson, 477 U.S. at 256. Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992). That is, the nonmoving party must adduce evidence sufficient to support a jury verdict. Anderson, 477 U.S. at 248. With these standards in mind, we turn to the merits.

III

A

The first issue we address, whether federal common law remedies are available in actions against common carriers within the scope of the Carmack Amendment, is purely a question of law. The Amendment provides, in relevant part:

> A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission . . . shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier . . . and any other common carrier that delivers the property and is subject to the jurisdiction of the Commission . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for actual loss or injury to the property caused by (1) the receiving carrier [or] (2) the delivering carrier . . . .

49 U.S.C. § 11707(a)(1) (1995).[2]

The Morrises contend that the purpose of the Amendment was simply to establish uniform rules governing the interstate shipment of goods by common carriers. Furthermore, federal common law remedies are not explicitly precluded by the text of the Amendment, and applying those remedies here will not frustrate the Amendment's purpose. Covan, on the other hand, maintains that section 11707 expressly limits the carrier's liability to the actual damages caused to the property up to the amount declared in the bill of lading.

_____

[2]Effective January 1, 1996, the entire Carmack Amendment was recodified at 49 U.S.C. § 14706 *et seq*. This recodification has no bearing on the issues presented in this appeal.

In support of their argument, the Morrises also point out that the Carmack Amendment contains a "savings clause," which provides that "except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law." 49 U.S.C. § 10103 (1995). Our reading of this language leads us to conclude initially that two aspects of this clause are of particular relevance here. First, remedies provided by the Carmack Amendment are "in addition to" other remedies. Second, such other remedies include those available under "common law." Based on a plain reading of this language, we would think that the Morrises' claim for punitive damages, if supported by federal common law, has a firm statutory basis as an additional remedy under the Carmack Amendment. We are not, however, writing on a clean slate and must therefore consider how the Carmack Amendment and its savings clause have already been interpreted.

B

Our analysis must begin with the Supreme Court's decision in Adams Express Co. v. Croninger, 226 U.S. 491 (1913). In Adams, the plaintiff hired the defendant, a common carrier, to ship a package containing a diamond ring from Ohio to Georgia. The package never arrived. The bill of lading stated that charges for delivering the package were based on the value of the shipment, that the value was to be declared by the shipper, and that failure to declare the value would result in a rate based on a value of $50. The

7

plaintiff had not declared a value. Nevertheless, he brought suit against the defendant in Kentucky state court for the full market value of the ring. Under Kentucky law, the contract to limit the plaintiff's recovery to an agreed or declared value was invalid, and the plaintiff was generally entitled to recover the actual value of the ring. The plaintiff prevailed, and the case eventually went to the Supreme Court.

The primary issue before the Court was whether a contract for an interstate shipment, as evidenced by a bill of lading, was governed by "the local law of the state, or by the acts of Congress regulating interstate commerce." Adams, 226 U.S. at 499-500. The Court noted that before the Carmack Amendment, the liability of common carriers for an interstate shipment of property was governed by either "the general common law"--as pronounced by the state and federal courts--or the statutory laws of the states. Id. at 504. Because of the many varying laws that might apply to a dispute arising out of any given interstate shipment of goods, it was impossible for interstate shippers and carriers to determine their risks and responsibilities with any reasonable certainty. See id. at 505. The Carmack Amendment, the Court held, "made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions." Id.; accord Air Prod. & Chem., Inc. v. Illinois Cent. Gulf R.R. Co., 721 F.2d 483, 486 (5th Cir. 1983), cert. denied, 469 U.S. 832 (1984).

8

The Court rejected the argument that the savings clause preserved the plaintiff's state law claims. It explained:

> It was claimed that [the savings clause] continued in force all rights and remedies under the common law or other statutes. But . . . it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the interstate commerce act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act. . . . [I]t could not in reason be construed as continuing in a shipper a commonlaw right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself.
>
> To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself. . . .

Adams, 226 U.S. at 507-08. Because the state common law upon which the plaintiff's claim relied was inconsistent with the regulatory scheme established by the Carmack Amendment, the Court held that the plaintiff's state common law claim was preempted. Id. at 508-13.

Recently, two Courts of Appeals have extended the holding in Adams to conclude that no common law remedies, including those based on federal common law, are available under the Carmack Amendment. See Gordon v. United Van Lines, Inc., 130 F.3d 282 (7th Cir. 1997); Cleveland v. Beltman N. American Co., 30 F.3d 373 (2d

Cir. 1994), <u>cert. denied</u>, 513 U.S. 1110 (1995).[3]  These courts have construed <u>Adams</u> to have adopted a general rule that the Carmack Amendment preempts any right or remedy "inconsistent" with those expressly provided by the Amendment, despite the plain language of the savings clause.  <u>See, e.g.</u>, <u>Cleveland</u>, 30 F.3d at 379.  Federal common law remedies, these courts have held, are inconsistent with the Carmack Amendment essentially because their availability would create an uncertainty in liability that the Amendment was enacted to eliminate.  <u>See</u> <u>id.</u> ("the availability of punitive damages [under federal common law] would frustrate the goal of the Carmack Amendment"); <u>Gordon</u>, 130 F.3d at 287 ("Even if we assume that a federal common law rule with respect to punitive damages would be uniform nationally, the punitive damages remedy would displace the package of remedies that the Interstate Commerce Act contains, and would allow precisely the uncertainty the Carmack Amendment was designed to bar.").

C

---

[3]Other circuits have sent somewhat mixed signals on the issue. The Fourth Circuit has permitted claims for punitive damages based on federal common law in addition to other Carmack Amendment remedies in an action for breach of the duty of nondiscrimination under 49 U.S.C. § 316(d) (1976).  <u>See</u> <u>Hubbard v. Allied Van Lines, Inc.</u>, 540 F.2d 1224 (4th Cir. 1976).  The Tenth Circuit initially interpreted the Carmack Amendment to preclude only *state* statutory claims in actions based exclusively on a bill of lading, <u>see</u> <u>Litvak Meat Co. v. Baker</u>, 446 F.2d 329 (10th Cir. 1971), but later held that all state common law remedies were barred under the Carmack Amendment, <u>see</u> <u>Underwriters at Lloyds of London v. North Am. Van Lines</u>, 890 F.2d 1112 (10th Cir. 1989) (en banc) (overruling <u>Litvak</u> with respect to claims based on state common law).  The Tenth Circuit's approach to *federal* common law remedies is unclear.

10

We find ourselves in substantial agreement with the Second and Seventh Circuits, although the conclusion reached by those courts is not as clearly mandated as their decisions might imply. Adams is somewhat ambiguous as to whether it contemplated that its reasoning would extend to federal common law claims. The Court's statement that the savings clause preserved "any right or remedy . . . under existing Federal law," 226 U.S. at 507, could be construed to permit remedies under federal common law. Ultimately, however, it is difficult to square this reading of Adams with its earlier statement that the savings clause preserved only those "rights or remedies . . . whether given by the interstate commerce act, or by state statute, *or common law*, not inconsistent with" the rights and remedies already provided by the Carmack Amendment. Id. (emphasis added). Adams was decided before Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Thus, the Court's reference to "common law" must be construed to include both state and federal common law, see Adams, 226 U.S. at 504 (describing "general common law" to consist of law "declared by this court and enforced in the Federal courts throughout the United States . . . or that determined by the supposed public policy of a particular state"), and its reference to "Federal law" to include only federal statutory law.

We therefore understand Adams to mean that any federal common law remedies preserved by the savings clause can afford no greater relief than provided by section 11707. In actions seeking damages

11

for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole remedy. That is, the Carmack Amendment preempts any common law remedy that increases the carrier's liability beyond "the actual loss or injury to the property," 49 U.S.C. § 11707(a)(1), unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property. Accord Gordon, 130 F.3d at 289; Rini v. United Van Lines, Inc., 104 F.3d 502, 506-07 (1st Cir.), cert. denied, 118 S.Ct. 51 (1997).

The Morrises' claims for compensatory and punitive damages exceed those permitted under section 11707. Both are based directly on the loss of property shipped in interstate commerce by a common carrier under a bill of lading. The compensatory damages are for lost wages and emotional suffering incurred by the Morrises as a result of the destruction of their household goods. The punitive damages are to punish Covan for any egregious conduct in the course of discharging its duties under the shipping contract. Because the Morrises do not allege any injuries separate from the loss of their property, their claims based on federal common law are preempted.

IV

The second and final issue we need to consider today is whether the district court erred in granting summary judgment on the Morrises' Carmack Amendment claim. In addition to their claims

12

based on federal common law, the Morrises sought reimbursement for the full value of their property as declared on the bill of lading--$29,000.00.  Covan paid them only $26,498.38, contending that it had delivered the remaining $2501.62 worth of property undamaged.  In its memorandum ruling, the district court dismissed the Morrises' claims in excess of $29,000.00, and their federal common law claims, but then, without further analysis, concluded that all of the Morrises' claims were to be dismissed.  We agree with the Morrises that the district court should have addressed these matters.

The district court had no basis before it for dismissing on summary judgment the Morrises' Carmack Amendment claim for damages up to $29,000.00.  As discussed previously, the Carmack Amendment permits shippers to recover the actual amount of loss to the property shipped.  See 49 U.S.C. § 11707(a)(1).  And, as here, the value of that property may be set by the shipper in the bill of lading.  See Adams, 226 U.S. at 508-12.  The Morrises alleged in their complaint that all of their household goods entrusted to Covan's care were destroyed by fire, smoke, or water.  Covan presented no evidence suggesting otherwise.  Because a genuine issue of material fact exists as to whether the goods eventually delivered by Covan were damaged, and thus whether the Morrises are entitled to the full $29,000.00 declared in the bill of lading,

dismissal of this claim must be reversed and remanded for further development.[4]

V

For the foregoing reasons, we affirm the judgment of the district court that the Carmack Amendment precludes the Morrises' claims that exceed the value of the destroyed property. We remand for further proceedings to consider the Morrises' Carmack Amendment claim for the full value of their destroyed property, their claim for attorney's fees, and their challenge to the validity of Covan's tariff.

AFFIRMED in part, REVERSED in part, and<br>REMANDED with instructions.

---

[4]In determining that this case fell within the scope of the Carmack Amendment, the district court applied the four-part test adopted by this court in Rohner Gehrig Co. v. Tri-State Motor Trans., 950 F.2d 1079 (5th Cir. 1992) (en banc). The district court found in accordance with this test that, among other things, Covan maintained a tariff within the prescribed guidelines of the Interstate Commerce Commission. The Morrises, however, were never provided an opportunity to examine or challenge the validity of the tariff, despite requesting the tariff in discovery. Covan instead submitted the tariff to the district court as an attachment to its reply brief in support of its motion for summary judgment. On remand, the district court should provide the Morrises with an opportunity to examine and challenge the validity of the tariff. If the tariff is invalid, of course, the case would not be governed by the Carmack Amendment.

We also note that the district court erred in dismissing the Morrises' claims for attorney's fees. Current provisions allowing such fees in cases within the scope of the Carmack Amendment, see 49 U.S.C. § 14708, are merely a recodification (with slight alteration) of provisions in effect since 1982. See 49 U.S.C. § 11711 (1995). On remand, the district court should also consider whether the Morrises are entitled to attorney's fees under section 11711. See Drucker v. O'Brien's Moving & Storage, Inc., 963 F.2d 1171 (9th Cir. 1992).

14