IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30797
_____

DENA LYNNE DAVISTON,

Plaintiff-Appellee,

versus

LOUISIANA STATE BOARD OF
NURSING, ET AL.,

Defendants,

BETTY JO AGUILLARD; KATHLEEN COOPER;
OSWALD FERRY, DR.; MARGARET GRIENER;
SHERRY L. HALEY; MAXINE JOHNSON;
PATSY McCLANAHAN; ENRICA SINGLETON, DR.;
TANNY JO VAN ZILE; VINCENT A.
CULLOTA, DR.; ELI SORKOW, DR.,

Defendants-Appellants.
_____

Appeal from the United States District Court
for the Western District of Louisiana
(97-CV-1236)
_____

June 21, 1999

Before KING, Chief Judge, REYNALDO G. GARZA and JOLLY, Circuit
Judges.

E. Grady Jolly:[*]

This case involves an interlocutory appeal of a denial of
absolute quasi-judicial and qualified immunity, claimed by the
members of the Louisiana State Board of Nursing (the "LSBN"). Dena
Lynne Daviston is a nurse and a recovering alcoholic. She sued the

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

LSBN and its individual members (referred to collectively as "the board members") for suspending her license. The district court granted a motion for summary judgment with respect to LSBN, finding that it was protected by the Eleventh Amendment. The district court, however, denied the motion with respect to the board members. The court held, inter alia, that the board members were not entitled to: (1) absolute quasi-judicial immunity--because the procedure by which Daviston was suspended was not quasi-judicial in nature--or (2) qualified immunity--because fact issues remained with respect to whether the board member's actions were objectively reasonable. We reverse the court's ruling on qualified immunity. We hold that the board members are entitled to qualified immunity and reverse for entry of judgment.

I

At the outset, we must observe that the record in this case is poorly developed. This deficit is further complicated by the intricate procedural history between Daviston and the LSBN.

Daviston was licensed as a registered nurse in the state of Louisiana in 1988. In 1993, it became apparent that Daviston had problems with alcohol abuse.[1] As a result, in November of that year, the LSBN, after a hearing, revoked Daviston's license for a minium of one year (1993 order). Although we do not have that

---

[1]Daviston does not contest that she is a recovering alcoholic.

2

order in the record, Daviston's complaint includes the following excerpt from the 1993 order:[2]

1. She shall sign and adhere to a new contract with Recovering Nurse Program ("RNP") for a minimum of one (1) year.

2. If reinstated, she agrees to sign and adhere to a new contract with RNP for another five (5) years.

3. She requests a hearing for the purpose of reinstatement at which time the registrant appears before the Board and shows cause as to why she should be allowed to practice as a registered nurse.

4. Further, failure to comply with the RNP contract shall cause a hearing to be scheduled for revocation of this registrant's license.

5. Failure to comply with the RNP contract after reinstatement shall result in an immediate suspension of this registrant's license and shall cause a hearing to be scheduled for revocation of this registrant's license.

On October 14, 1994, Daviston signed a one-year contract with the RNP ("one-year contract") setting forth conditions for reinstatement. In 1995, Daviston applied for reinstatement and, on November 16, 1995, the LSBN issued an order denying reinstatement for another year ("1995 order"). This order again conditioned reinstatement on Daviston adhering to a contract with the RNP.

Daviston appealed the 1995 order denying her reinstatement to the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge. That court affirmed the order. Then, on

---

[2]Given the board members' citation to this passage in their brief, we presume that they do not challenge that it is an accurate rendition of the original order.

November 13, 1996, Daviston signed a consent order with the LSBN in which she agreed to a new contract with the RNP ("consent order"). On the same day, she signed a contract with the RNP ("five-year contract").

Pursuant to the five-year agreement, Daviston agreed to submit to random urinalysis tests for the presence of alcohol. On December 13, 1996 and January 15, 1997, Daviston tested positive for the presence of ethanol. On February 6, 1997, the LSBN suspended Daviston's license for two years and required her to attend relapse therapy.

Daviston, however, is an insulin dependent diabetic for whom urinalysis testing is not reliable. At several points, both before and after her suspension, Daviston attempted to call this fact to the attention of LSBN. On March 26, 1997, the LSBN reinstated Daviston's license on the basis of a report from its Medical Review Officer stating that the readings from the two tests were inconclusive. As far as the record shows, Daviston has continued her employment uninterrupted.

So, to sum up the proceedings before the LSBN involving Daviston: the LSBN issued its 1993 order revoking Daviston's license. Pursuant to that order, Daviston agreed to the one-year contract with LSBN. The LSBN subsequently issued its 1995 order-- refusing to reinstate Daviston's license for another year--that Daviston unsuccessfully appealed. In 1996, Daviston and the LSBN agreed to the consent order and, pursuant to that order, Daviston

4

agreed to the five-year contract with the RNP. Then on February 6, 1997, the LSBN suspended Daviston for testing positive, only to reinstate her on March 26, 1997.

We are somewhat perplexed that neither the LSBN nor Daviston thought to place any of these documents in the record. We thus have been required to decide this case without the benefit of the 1993 order, the one-year contract, the 1995 order, the consent order, and the five-year contract. Furthermore, there is either no written record of the LSBN's February 6, 1997 decision to suspend Daviston's license or, if such a record exists, it too was excluded from the record.

Daviston filed suit in a federal district court seeking compensatory and punitive damages for a violation of 42 U.S.C. § 1983 and declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2284 based on her forty-eight day suspension. The board members filed a motion for summary judgment in which they argued that they were entitled to both absolute quasi-judicial immunity and qualified immunity. The district court denied the summary judgment motion, holding that the board members' actions were not quasi-judicial in nature because Daviston had been suspended without the opportunity for a pre-deprivation hearing and without recourse to any procedural safeguards. The district court further held that genuine issues of material fact existed with respect to whether the board members should have known that urinalysis is an unreliable form of drug testing. He therefore concluded that the

5

board members were not entitled to summary judgment on their qualified immunity claim.

II

Because we resolve this case on the basis of qualified immunity, we need not address the absolute quasi-judicial immunity issue.[3] We review <u>de novo</u> the district court's summary judgment ruling, applying the same standards as the district court. <u>See, e.g.</u>, <u>U.S. v. Johnson</u>, 160 F.3d 1061, 1063 (5th Cir. 1998).

---

[3]Initially, we were inclined to resolve this appeal on the basis of quasi-judicial immunity--that is, that the suspension was pursuant to a consent order that was the result of a quasi-judicial proceeding. Based on the record before us, however, we cannot determine whether Daviston was suspended because she violated the consent order. We are therefore unable to decide the case on the basis of the prior proceedings between Daviston and the LSBN.

Our review of the record does indicate that Daviston went through a series of quasi-judicial proceedings in which she was ordered to agree, ultimately through the consent order and the five-year contract, to submit to spot testing for alcohol. The excerpts we have available from the 1993 order make clear that if Daviston breached this agreement, she would be immediately suspended. If the LSBN suspended her for breaching the five-year agreement, the LSBN would be protected under absolute, quasi-judicial immunity. The problem is, without access to the five-year contract or any of the relevant orders, we cannot ascertain whether Daviston was suspended <u>because</u> she breached the agreement, that is, we cannot determine if the agreement provided explicitly that if she tested positive she would be automatically suspended. In fact, because we have no written articulation of the LSBN's reasons for suspending her in 1997, we cannot even determine whether the LSBN suspended Daviston's license because it <u>thought</u> Daviston had breached the agreement. For the reasons stated by the district court, if the board members sought to suspend Daviston without the force of a binding agreement, the process by which Daviston was suspended is anything but quasi-judicial in nature and, under our decision in <u>O'Neal v. Mississippi Board of Nursing</u>, 113 F.3d 62 (5th Cir. 1997), it is unlikely that we would accord the board members absolute quasi-judicial immunity. Because the record makes it difficult to address this issue, we focus instead on the board members' qualified immunity argument.

6

Summary judgment is appropriate if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate question with respect to this inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of demonstrating that there are no genuine issue of material fact. When the nonmoving party bears the burden of proof at trial, the moving party may carry its burden by demonstrating an absence of evidence necessary to support the nonmoving party's case. Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). If the moving party is successful, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

To succeed in making out a violation of 42 U.S.C. § 1983, Daviston must demonstrate that the board members' conduct (1) violates a clearly established constitutional or statutory right and (2) is objectively unreasonable. Sanchez v. Swyden, 139 F.3d 464, 466-67 (5th Cir. 1998). Daviston has not provided evidence that shows the conduct was objectively unreasonable. Here, the

7

board members were confronted with a nurse with a history of problems with alcohol who apparently had failed a urinalysis test. Given the potential risk to patients of being treated by an impaired nurse, it was not unreasonable to suspend that nurse.

The district court apparently thought the board members had acted unreasonably based on Daviston's argument that they knew that Daviston was an insulin dependent diabetic and either knew or should have known that a urinalysis test would not be reliable. However, after a review of the record, we can find absolutely no evidence proffered by Daviston to support this allegation. Each member of the board submitted an affidavit in which the person declared that he or she had no knowledge that the test results were inaccurate. Daviston does not submit evidence to rebut these affidavits. Nor does she provide any explanation for why the board members should have known that the test results were unreliable. Although we consider summary judgment evidence in a light most favorable to the nonmoving party, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice." Morris, 144 F.3d at 380. We therefore hold that the district court erred by not granting the board members motion for summary judgment.

III

On appeal, the board members argue that they are entitled to absolute quasi-judicial and qualified immunity. Because of the

8

distressingly sparse state of the record, it is difficult for us to address the board members' arguments with respect to quasi-judicial immunity. The record is equally sparse with respect to the qualified immunity argument. Unfortunately for Daviston, this time the dearth of evidences cuts against her. Because we find no evidence that the board members' actions were objectively unreasonable, we hold that they are entitled to qualified immunity. For the foregoing reasons, we REVERSE the ruling of the district court with respect to whether the board members are entitled to qualified immunity and REMAND for entry of judgment consistent with this opinion.

REVERSED in part and REMANDED for entry of Judgment.