**PRO–LIFE COUGARS and Jeanne S. Tullos, Plaintiffs,**

v.

**UNIVERSITY OF HOUSTON, Dr. Elwyn C. Lee, in his official capacity, and Dr. William F. Munson, in his official capacity, Defendants.**

No. CIV.A. H–02–219.

United States District Court,
S.D. Texas,
Houston Division.

March 13, 2003.

Michael G Tapp, Houston, TX, Benjamin W Bull, Alliance Defense Fund Law Ctr, Scottsdale, AZ, Jordan W Lorence, Alliance Defense Fund Law Ctr, Senior Counsel, Fairfax, VA, James C Spencer, Justice for All Inc, Oakley, KS, for Pro–Life Cougars, Jeanne S Tullos, plaintiffs.

James C Todd, Office of Attorney General, Austin, TX, for University of Houston, Dr Elwyn C Lee, Dr William F Munson, defendants.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending is Plaintiffs' Motion for Summary Judgment (Document No. 35). After carefully considering the motion, response, reply, and applicable law, the Court concludes that the motion should be granted.[1]

### I. *Discussion*

This civil rights action was brought under 42 U.S.C. § 1983 by Plaintiffs Pro-Life Cougars and Jeanne S. Tullos ("the Plaintiffs") against the University of Houston (the "University"), Dr. William F. Munson ("Dean Munson"), the Assistant Vice President for Student Development and Dean of Students at the University, and Dr. Elwyn C. Lee ("Lee"), Vice President for Student Affairs at the University (collectively referred to as "Defendants").[2] Plaintiffs assert that the University has a speech policy in place that discriminates against student expression on campus that is deemed to be potentially disruptive. By this lawsuit, they seek both a declaration that the speech policy is unconstitutional under the First and Fourteenth Amendments to the United States Constitution and preliminary and permanent injunctions preventing Defendants from enforcing the policy against Plaintiffs on the University of Houston campus.

The uncontroverted summary judgment evidence establishes that at the time of the events giving rise to this action the University required a student organization that desired to engage in organized expressive activities on the University campus to fill out forms entitled "UH Event Registration" and "University Center Reservation Request" forms. The forms require student organizations requesting permission to access the campus for expressive activities to provide a description of the proposed expressive activity as well as the location and date of the proposed event. For student expression that the University deems "potentially disruptive," the University further requires that student organizations follow the prerequisites listed under the "Disruption of University Operations and Events" policy, which is set forth at page 65 of the University Student Handbook 2001–2002.

The "Disruption of University Operations and Events" policy (the "First Policy")[3] in pertinent part provides:

The right of peaceful expression and/or assembly within the university community must be preserved; however, the University has the right to provide for the safety of individuals, the protection of property, and the continuity of the educational process. The University will not permit any individual or group of individuals to disrupt or attempt to disrupt the operation and functioning of the University by any device, including, but not limited to, the use of pagers, cell phones, and other communication devices.

At least two weeks prior to an event which is potentially disruptive, in addition to making the appropriate facility

---

1. After filing this Motion for Summary Judgment, Plaintiffs amended their Complaint to add new claims based upon a revised University of Houston policy. Hence, the pending Motion for Summary Judgment, which seeks judgment only on the Original Complaint, is in effect a motion for partial summary judgment.

2. By Order entered June 4, 2002, the Court granted Defendants' Motion to Dismiss Plaintiffs' claims against the University and Plaintiffs' claims for monetary damages against Lee and Dean Munson. (Document No. 23).

3. This is referred to as the "First Policy" in Plaintiffs' Amended Complaint.

reservations, the sponsor of the event shall meet with the Dean of Students' designate to determine the time, place and manner of the event. Potentially disruptive events, including events where amplified sound is used outdoors, will be limited to the hours of 11:30 a.m. to 1 p.m. and 4 p.m. to midnight on class days. On non-class days, potentially disruptive events must be over by midnight. Authorized sites for events of this nature include the University Center (UC) Arbor, UC Patio, UC Satellite, or Lynn Eusan Park. Generated output shall not exceed the established decibel levels. Information on established decibel levels is available in the UC Reservations Office and the Dean of Students Office. Any exception to this policy must be approved by the Dean of Students.

In emergency situations, the president or designated representatives have the responsibility to determine when the conditions cited above prevail and shall have the authority to take such steps as are deemed necessary and reasonable to quell or prevent such disruption.

Document No. 13, Ex. A, at 65–66. Expressive activities sponsored by University student organizations that are not deemed to be "potentially disruptive" by Defendants are not required to submit to the same time, location, and content restrictions imposed on expressive activities deemed "potentially disruptive" under the First Policy.

On October 2001, in accordance with University policies, Plaintiffs applied for a permit to display their pro-life "Justice For All Exhibit" on Butler Plaza on the University campus. The exhibit was described as an outdoor photographic educational exhibit, presented on panels made of tough vinyl, braced with aluminum pipe, and weighted down with sandbags that require no digging or pegs being driven into the ground. In addition, the exhibit contained eight, two-sided signs, approximately 3 feet by 4 feet in size. The purpose of the exhibit, as described in Plaintiffs' event forms, was to promote "justice and the right to life for the unborn, the disabled, the infirm, the aged, and all vulnerable people; [to] help women and men in crisis pregnancies find support services for themselves and for their unborn children; [to promote] programs designed to assist in abortion recovery needs; [and to promote] discussion of related bio-ethical issues like stem cell research, in vitro-fertilization, RU 486, and 'emergency contraception.'" Document No. 13, at 3.

Plaintiffs requested to display their exhibit on November 5–8, 2001, at any of three suggested grassy areas on Butler Plaza. Upon reviewing Plaintiffs' event forms, however, Dean Munson determined that the "Justice for All Exhibit" would be "potentially disruptive" and therefore denied Plaintiffs permission to present their exhibit on Butler Plaza. Having deemed Plaintiffs' exhibit "potentially disruptive," Dean Munson determined that the exhibit had to be relegated to one of two more remote sites that he suggested for "potentially disruptive" events: UC Patio or Lynn Eusan Park. Notably, a few months preceding Plaintiffs' request, the University had granted permission to the Free Speech Coalition, a different student organization, to display the same "Justice for All Exhibit" on Butler Plaza for three consecutive days during March 2001.

Plaintiffs declined to use either of the two alternate "potentially disruptive" event sites proposed by Dean Munson for the stated reasons that one site was too small for the exhibit, and the other site was too far removed from the part of campus where students congregate and was also obscured from view by trees. Despite Plaintiffs' objections to the suggested locations, however, Dean Munson,

relying upon the University First Policy and his determination that the exhibit was "potentially disruptive," denied Plaintiffs' request to place their exhibit on Butler Plaza. Following Dean Munson's denial, Plaintiffs filed the present lawsuit seeking a declaration that the First Policy is unconstitutional under the First and Fourteenth Amendments to the United States Constitution and seeking preliminary and permanent injunctions preventing Defendants from enforcing the First Policy against Plaintiffs on the campus.

According to Plaintiffs, the First Policy is unconstitutional because it is both a prior restraint and vests Dean Munson with unfettered discretion to enforce the First Policy. In addition, Plaintiffs argue that the First Policy is overbroad and vague. Defendants respond that the First Policy is constitutional because it is a content and viewpoint neutral regulation of the time, place, and manner of expressive activities on the University campus.

By Order entered June 24, 2002, the Court granted Plaintiffs' Motion for a Preliminary Injunction and ordered Defendants "to cease, desist, and refrain from acting under or invoking the authority of the Policy set forth at page 65 of the Student Handbook 2001–2002, entitled 'Disruption of University Operations and Events,' so as to impose any prior restraint on student expressive activity in Butler Plaza, a designated public forum on the main campus of the University of Houston." Document No. 29, at 2. The Court further ordered the University "to cease, desist, and refrain from denying to Plaintiffs the right to display in Butler Plaza their 'Justice for All Exhibit' as de-scribed and conditioned by Plaintiffs in their UH Event Registration." *Id.*

Defendants filed a Motion to Dissolve Preliminary Injunction and a Motion for Stay of Preliminary Injunction Pending Appeal, arguing that the Order of Preliminary Injunction as well as the question regarding the constitutionality of the University Policy became moot the day following the entry of the Order of Preliminary Injunction, because the President of the University, Arthur K. Smith, signed and formally approved a new speech policy that superseded the First Policy made the subject of the Order of Preliminary Injunction and the Original Complaint.[4] Defendants further argued that the Order of Preliminary Injunction should be stayed during the pendency of Defendants' appeal of the Order of Preliminary Injunction before the Fifth Circuit Court of Appeals. By Order entered August 9, 2002, the Court denied both Defendants' Motion to Dissolve Preliminary Injunction and Defendants' Motion for Stay of Preliminary Injunction Pending Appeal. Document No. 50.[5]

## II. *Summary Judgment Standard of Review*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,*

---

4. The new speech policy is referred to as the "Second Policy" in Plaintiffs' Amended Complaint.

5. Defendants also sought a stay of the Court's Order of Preliminary Injunction in the Court of Appeals for the Fifth Circuit, which the Fifth Circuit denied on August 20, 2002. Document No. 53.

477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Id.* "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id.*

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993) (citing *Matsushita*, 106 S.Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S.Ct. at 2513.

### III. *Discussion*

#### A. *Mootness*

■ The University First Policy that Plaintiffs contend is unconstitutional is found on page 65 of the UH Student Handbook 2001–2002. Defendants maintain that the Court should not consider the constitutionality of the First Policy, because the University, after the Order of Preliminary Injunction issued, adopted a new and revised policy to replace the First Policy. Under the Second Policy, which had been under study and in preparation for some months before it was adopted, all student expressive activity, other than University sponsored events, is banned from Butler Plaza regardless of how quiet, small, or nondisruptive the expressive activity may be. Defendants therefore argue that Plaintiffs' constitutional challenge to the First Policy is moot.

In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), in an appeal taken from the Fifth Circuit Court of Appeals, the Supreme Court considered the mootness issue raised here by Defendants. The Court of Appeals had declared unconstitutional two sections of a licensing ordinance governing coin-operated amusement establishments in the City of Mesquite, Texas. *Id.* at 1072. On appeal to the Supreme Court, the City advised the Court that the City had recently revised the ordinance and argued that the constitutionality of the former ordinance therefore had become moot. *Id.* at 1074. The Court held to the contrary. *Id.* at 1074–1075. The Court wrote that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 1074 & n. 10 (noting that the test for mootness in such cases is a stringent one). If mere voluntary cessation of illegal conduct rendered a case moot, then "courts would be compelled to leave '[a] defendant … free to return to his old ways.'" *Id.* at 1074 n. 10 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)).

In *Cooper v. McBeath,* 11 F.3d 547, 550 (5th Cir.1994), the Fifth Circuit recognized the well settled-rule that a constitutional challenge to a policy does not become moot when the policy is amended or when the policy is repealed. The purpose of the rule is to prevent a defendant from later re-adopting an unconstitutional policy that had been rendered moot by an amendment. *See id.* (noting that the repeal of objectionable language in a statute does not preclude a defendant from reenacting precisely the same provision at a later time if the challenge to the objectionable language is held to be moot). Defendants argue that the rule in *Cooper* should not apply here because there is no indication that Defendants will return to the First Policy. What one hand gives, however, the other takes away.

On the one hand, Defendants argue that the challenge to the First Policy is moot, but on the other, they continue vigorously to defend the constitutionality of the First Policy. As they have stated in the past and continue to argue in their opposition to Plaintiffs' Motion for Summary Judgment, Defendants "did not, and do not concede the unconstitutionality of the prior [P]olicy." Document No. 48, at 12. Moreover, following the Court's Order of Preliminary Injunction, Defendants filed an appeal to the Fifth Circuit Court of Appeals challenging the Court's prior rulings and defending the constitutionality of the First Policy Defendants now contend they will not re-adopt. Defendants' persistent defense of the constitutionality of the First Policy, and the power of the University to re-enact it, prevents the Court from finding that the constitutional question is moot. This is particularly true given the requirements of the Second Policy adopted by the University, which now require all faculty, staff, students, and student organizations who wish to engage in outdoor expressive activities, to make reservations ten days in advance to use one of four sites designated by the University where such expressive activities will be permitted, or, if reservations are not obtained, to confine their outdoor expressive activities to a single site east of the University power plant. Given the pervasive limitations upon outdoor free speech in the Second Policy, the First Policy may be recalled with fondness for its "liberality," and hence, an attractive alternative to which a University administration that is less hostile to free speech may well revert. Certainly, in the context of this case, the constitutionality of the First Policy is not a moot question.

### B. *Constitutional Challenge*

■■■■ "[A] speaker's right to access government property is determined by the nature of the property or 'forum.'" *Hays County Guardian v. Supple,* 969 F.2d 111, 116 (5th Cir.1992). Defendants assert that Butler Plaza is a limited public forum and that as such they are allowed to impose greater speech restrictions than otherwise allowed for public forums. Plaintiffs on the other hand, argue that the University and in particular Butler Plaza, are traditional public fora. The distinction is significant because "[t]he right of access to government-owned property for expressive activity is greatest when the property is a 'public forum.'" *Id.* Thus, the constitutionality of speech restrictions in a limited public forum are judged under the reasonableness standard, while speech restrictions in a traditional or designated public forum are subject to strict scrutiny. *Chiu v. Plano Indep. Sch. Dist.,* 260 F.3d 330, 346 (5th Cir.2001).

■■■■ To determine whether a forum is either a limited non-public forum or a designated public forum, a court should consider two factors: (1) the government's intent with respect to the forum; and (2) the nature of the forum and its compatibility with the speech at issue. *Id.,* 260 F.3d

at 346. Moreover, government owned property is considered a traditional public forum when the property has been traditionally used by the public for assembly and debate or when the government intentionally has opened up a non-public forum for public discourse. *Hays,* 969 F.2d at 116.

The University is a large state university with its main campus within a few miles of downtown Houston. On the campus are many streets, parking facilities, sidewalks and walkways, various stadiums and sports arenas, theaters, bookstores, convenience stores, some 25 restaurants, a Hilton Hotel, and numerous park-like plazas, nearly all of which facilities are open and accessible not only to students and faculty but also to the general public. Approximately 3,000 students live on campus in six resident dormitories. Within the University is Butler Plaza, a plaza that is approximately four acres in size and is centrally located on the University main campus.

Defendants admit that they purposefully opened up Butler Plaza as a forum for student expression. As Dean Munson stated in his affidavit, "[prior] to April 2001, my office permitted various events to be held on the University's Butler Plaza." Document No. 15, Affidavit of Dean Munson, at 2. Dean Munson also testified at the preliminary injunction hearing held before the Court, that throughout his tenure at the University, which dates back to 1985, Butler Plaza has been a site used for student expressive activities on campus and that as far back as he can remember, there has been a student expressive event on Butler Plaza on average about once every other month. Document No. 49, at 60.

This uncontroverted evidence compels the conclusion that both the University, and in particular Butler Plaza, are public fora designated for student speech.

This conclusion is consistent with both the Supreme Court's holding in *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 274 n. 5, 70 L.Ed.2d 440 (1981), in which the Court noted that the "campus of a public university, at least for its students, possesses many characteristics of a public forum" and the Fifth Circuit's holding in *Hays,* in which the Fifth Circuit explained that the function of a university campus suggests that the intended role of the same is more akin to a public street or park than a non-public forum. *Hays,* 969 F.2d at 116 (finding that the campus of Southwest Texas State University if a public forum). When as here, a University by policy and practice opens up an area for indiscriminate use by the general public, or by some segment of the public, such as student organizations, such area may be deemed to be a designated public forum. *See Chiu,* 260 F.3d at 348 (analyzing school restriction placed on middle school grounds).

Any restriction imposed by the University on student expressive activity on Butler Plaza must therefore be analyzed under the strict scrutiny standard as opposed to the reasonableness standard suggested by Defendants. *Id.* at 346. Under the strict scrutiny standard, a content-neutral regulation of speech on a public forum "must be narrowly tailored to serve a significant government interest and must leave open ample alternative channels of communication." *Hays,* 969 F.2d at 118. "A regulation is 'narrowly tailored' when it does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989)). Moreover, a University's denial to particular student groups " 'use of campus facilities for meetings and other appropriate purposes' must

be subjected to the level of scrutiny appropriate to any form of prior restraint." *Widmar,* 102 S.Ct. at 274 n. 5 (quoting *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 2346–47, 33 L.Ed.2d 266 (1972)).

■■■■ The term prior restraint is defined as "any scheme which gives public officials the power to deny use of a forum in advance of its actual expression." *BLACK'S LAW DICTIONARY* 1194 (6th ed.1990); *see also Alexander v. United States,* 509 U.S. 544, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993) (a prior restraint is an administrative or judicial order that forbids certain communications when issued in advance of the time that such communications are to occur). Because a prior restraint censors speech before it occurs, there is a heavy presumption against the constitutionality of *prior restraints. Forsyth County v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992); *Freedman v. State of Md.,* 380 U.S. 51, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965); *see also Gay Student Servs. v. Tex. A & M Univ.,* 737 F.2d 1317, 1325 (5th Cir.1984). Prior restraints, however, are not *per se* unconstitutional. A scheme tantamount to a prior restraint will be upheld so long as certain constitutional requirements are met. *Forsyth County,* 112 S.Ct. at 2401; *see also, e.g., Thomas v. Chicago Park Dist.,* 534 U.S. 316, 122 S.Ct. 775, 780–81, 151 L.Ed.2d 783 (2002) (holding that while the challenged ordinance constituted a prior restraint, it was nevertheless constitutional because it contained adequate procedural safeguards and objective standards to guide the hand of the decisionmaker.)

First, the scheme must not delegate overly broad discretion to a government official. *Forsyth County,* 112 S.Ct. at 2401; *see also Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975) (noting that "the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use"). Second, "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message . . . ." *Id.* at 2401. Finally, the scheme "must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Id.*

■■■■ Plaintiffs maintain that the University First Policy is unconstitutional because it is a prior restraint and vests Dean Munson with unfettered discretion. The First Policy, as previously observed, provides that a student organization that wishes to use Butler Plaza as a forum for expressive activity must first submit to the University an application for approval. If the University official, in this case, Dean Munson, determines that the proposed expressive activity is "potentially disruptive," the application will not be approved and the student activity will be banned from Butler Plaza. In that respect, the First Policy constitutes a prior restraint. Although prior restraints are not *per se* unconstitutional, the First Policy lacks the procedural safeguards necessary to survive a constitutional challenge.

First, the First Policy on its face is devoid of any objective guidelines or articulated standards that Dean Munson should consider when determining whether any given student expressive activity should be deemed "potentially disruptive." Under the First Policy, every time a student organization applies for a permit to use Butler Plaza, Dean Munson, *in his sole discretion and without the aid of objective guidelines,* is free to determine whether the proposed student expressive activity is or is not "potentially disruptive." Dean Munson is not required to provide an explanation for his decision. Nor is his deci-

sion reviewable. Therefore, under the First Policy, Dean Munson is empowered arbitrarily to deny access to Butler Plaza to students whose expressive activity *he* may deem offensive or undesirable. Such unbridled discretion renders the First Policy unconstitutional. *Cf. Thomas,* 122 S.Ct. at 780–81 (finding constitutional an ordinance tantamount to a prior restraint, because the ordinance provided specific and objective standards for the denial of a permit, required the administrator to process an application for a permit within 28 days, required the administrator clearly to explain his reasons for the denial of a permit, and provided review of the administrator's decision).

While Defendants respond that Dean Munson has applied the First Policy in a content-neutral manner and would continue to do so, the Supreme Court has held that "the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so." *Forsyth County,* 112 S.Ct. at 2403 n. 10; *see also City of Lakewood v. Plain Dealer Publ'g, Co.,* 486 U.S. 750, 108 S.Ct. 2138, 2147, 100 L.Ed.2d 771 (1988). In this case, neither the language of the First Policy nor the application of the same support the conclusion that there are narrowly drawn, reasonable, and definite standards guiding the hand of the University official. Moreover, Defendants' argument that Dean Munson considers only content-neutral factors when applying the First Policy presumes that Dean Munson will act in good faith and adhere to standards absent from the ordinance's face. "[T]his is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood,* 108 S.Ct. at 2151.

The First Policy also is not narrowly tailored to serve a significant governmental interest. To be narrowly tailored, a speech regulation must not burden substantially more speech than is necessary to further the stated legitimate governmental interest, which in this case is the preservation of the University's academic mission. *Hays,* 969 F.2d at 118. But as the testimony of Dean Munson illustrates, the First Policy on its face and as applied can and has burdened more speech than necessary to carry out the University's academic mission. Dean Munson testified that after having considered for some time the eligibility of a particular event to be displayed on Butler Plaza on a case-by-case basis, and after allegedly receiving some complaints that *some* expressive activities could be overheard in some classrooms located near the plaza, he determined, as of April 2001, that *all* expressive activity on Butler Plaza, irrespective of how quiet, small, benign, or nondisruptive the expression may be, is "potentially disruptive" and thus banned from Butler Plaza.

Dean Munson testified that he would regard as "potentially disruptive" even the silent and nondisruptive expression of a single student on Butler Plaza holding a small sign proclaiming "The World is a Beautiful Place." Further, in keeping with his finding that *all* expressive activity on Butler Plaza is "potentially disruptive," Dean Munson testified that during the holiday season, he ordered removed from Butler Plaza a Christmas tree which carried with it some cheerful note of Season's Greetings for University students. The uncontroverted exercise of such sweeping power illustrates the unconstitutionality of the First Policy and Dean Munson's failure to adhere to the constitutional requirement that regulation of speech in a public forum be narrowly tailored and not burden more speech than is necessary to further the stated legitimate governmental interest.

Finally, Defendants argue that the First Policy was not required to be narrowly tailored to serve a compelling state interest, but should be judged by a more permissive standard because it is viewpoint and content neutral. Ostensibly, the Dean of Students only regulates the time, place, and manner of the expression. Critical, however, is the Dean's unfettered discretion to grant or deny permits. The Supreme Court has explained that "[a] government regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Forsyth County,* 112 S.Ct. at 2401 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981)). "[A]ny permit scheme controlling the time, place, and manner of speech ... must be narrowly tailored to serve a significant governmental interest . . . ." *Id.*

For the foregoing reasons, the First Policy fails to pass constitutional muster under the First and Fourteenth Amendments to the United States Constitution. Accordingly, Plaintiffs' Motion for Summary Judgment will be granted.

## IV. *Order*

For the reasons set forth, it is hereby

ORDERED that Plaintiffs' Motion for Summary Judgment (Document No. 35) is GRANTED, and Plaintiffs are awarded a partial summary judgment as follows:

It is ADJUDGED and DECLARED that the "Disruption of University Operations and Events" Policy, which is set forth at page 65 of the University Student Handbook—2001–2002 ("First Policy"), is invalid and unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and the conduct of Defendants Dr. Elwyn C. Lee, in his official capacity as Vice President for Student Affairs, University of Houston, and Dr. William F. Munson, in his official capacity as Assistant Vice President for Student Development and Dean of Students, University of Houston, in denying Plaintiffs' application to place their "Justice for All Exhibit" on the University of Houston campus at Butler Plaza, was unconstitutional conduct under the First and Fourteenth Amendments. It is further

ORDERED and ADJUDGED that Defendants Dr. Elwyn C. Lee, Vice President for Student Affairs of the University of Houston, and Dr. William F. Munson, Assistant Vice President for Student Development and Dean of Students at the University of Houston, in their official capacities, and all other persons acting as their agents, delegatees, servants, and otherwise acting in concert with them who receive actual notice of this Judgment, shall CEASE, DESIST, and REFRAIN from acting under or invoking the authority of the policy set forth at page 65 of the Student Handbook—2001–2002, entitled "Disruption of University Operations and Events" so as to impose any prior restraint on student expressive activity in Butler Plaza, a designated public forum on the main campus of the University of Houston; and shall further CEASE, DESIST, and REFRAIN from enforcing the First Policy against Plaintiffs so as to deny Plaintiffs their rights to engage in expressive activities on the University of Houston campus, and from otherwise enforcing the University's First Policy to discriminate against Plaintiffs or to restrict Plaintiffs' expressive activities on the basis of the content and viewpoint of their expression.

After having considered that prevailing Plaintiffs Pro–Life Cougars and Jeanne S. Tullos, respectively, are a University student organization and a University student, and that they have vindicated signifi-

cant free speech rights guaranteed by the First and Fourteenth Amendments to the United States Constitution, the Court concludes that this is a case in which Plaintiffs are entitled to have and recover a reasonable attorney's fee as part of the costs incurred by them in this portion of the lawsuit challenging the First Policy. *See* 42 U.S.C. § 1988(b). The parties are requested to make reasonable disclosures and consult in good faith with the objective of reaching an agreement on a reasonable attorney's fee to be awarded on this part of the case after the remaining portion of the case has been adjudicated and when Final Judgment is then entered.

SO ORDERED.

The Clerk will enter this Order and notify all counsel of record.