# Supreme Court of Florida

_____

No. SC14-54
_____

**IVANA VIDOVIC MLINAR,**
Petitioner,

vs.

**UNITED PARCEL SERVICE, INC., et al.,**
Respondents.

[March 3, 2016]

PERRY, J.

This case is before the Court for review of the Fourth District Court of

Appeal's decision in Mlinar v. United Parcel Service, Inc., 129 So. 3d 406 (Fla. 4th

DCA 2013), which the district court certified as being in direct conflict with the

Fifth District Court of Appeal's decision in Braid Sales & Marketing, Inc. v. R & L

Carriers, Inc., 838 So. 2d 590 (Fla. 5th DCA 2003). We have jurisdiction. See art.

V, § 3(b)(4), Fla. Const. For the reasons discussed below, we quash the Fourth

District's decision to the extent it is inconsistent with this opinion.

## STATEMENT OF THE CASE AND FACTS

Ivana Vidovic Mlinar, a professional paint artist, brought an action in circuit court against the United Parcel Service ("UPS") and others, alleging that her two oil paintings were unscrupulously removed from their packaging during the interstate shipment process and subsequently sold to a third party without her knowledge or consent. The Fourth District set forth the relevant facts and circumstances as follows:

> [Mlinar] is an artist who created two valuable oil paintings: Advice and The Messenger. Her husband took the paintings to Pak Mail, a third party retailer, to be shipped via UPS to New York. When the container arrived at its intended destination in New York, it was empty. The duct tape had been sliced and the paintings had been removed. [Mlinar] reported the loss to UPS and Pak Mail. Months later, Pak Mail offered her $100 for the missing contents of the package.
>
> At some point, UPS sold the paintings to Cargo Largo, UPS's lost goods contractor. Cargo Largo later auctioned the paintings. An individual named Aaron Anderson purchased one of the paintings at the Cargo Largo auction.
>
> About two years after [Mlinar] lost possession of the paintings, she received a telephone call from Anderson, who informed her that he had just purchased Advice at the Cargo Largo auction sale. Anderson inquired into the value of the painting, and she informed him that it had been appraised to be worth $20,000. He also informed her that The Messenger was auctioned in the same lot, but that he did not know the identity of the purchaser.
>
> Anderson placed a listing online offering to sell Advice and even offering to introduce the buyer to [Mlinar]. He eventually acquired The Messenger as well. He then placed advertisements online in which he offered to sell or trade both paintings, and again offered to introduce the buyer to [Mlinar].
>
> Based on the above facts, [Mlinar] filed suit against UPS, Pak Mail, Cargo Largo, and Anderson. According to the operative

complaint, UPS selectively located the contents of her container "based on their nature, probable worth, and lack of insurance," and then sold the paintings to Cargo Largo for "some as of yet undiscovered consideration." UPS also utilized [Mlinar]'s contact information on the back of each painting "to catalogue, sell and/or distribute" the paintings to Cargo Largo.

     [Mlinar] asserted four claims in her complaint: Conversion (Count I—against UPS, Cargo Largo, and Pak Mail), Profiting by Criminal Activity (Count II—against UPS, Cargo Largo, and Pak Mail), Unauthorized Publication of Name or Likeness (Count III— against UPS, Cargo Largo, and Anderson), and a claim under Florida's Deceptive and Unfair Trade Practices Act (Count IV— against UPS).

     The trial court dismissed all of [Mlinar]'s claims against UPS, ruling that they were preempted by the federal Carmack Amendment.

Mlinar, 129 So. 3d at 408-09.

On appeal, the Fourth District also held that Mlinar's state law claims were preempted by the Carmack Amendment, reasoning that the allegations asserted did not involve conduct separate and distinct from the delivery, loss of, or damage to goods, but instead were predicated on or closely related to the performance of the delivery contract. Id. at 410-11. Accordingly, the Fourth District affirmed the trial court's final order of dismissal but certified conflict "[t]o the extent [its] opinion conflicts with the Fifth District's decision in Braid Sales." Id. at 411-12. Mlinar subsequently filed a notice with this Court to invoke discretionary jurisdiction to review the Fourth District's decision. We granted review.

ANALYSIS

**Preemption of State Law Claims**

Carmack Amendment[1]

The Carmack Amendment to the Interstate Commerce Act was passed in 1906, ch. 3591, § 7, 34 Stat. 595 (1906), and governs the liability of domestic common carriers for losses of or damage to goods en route. King Ocean Cent. Am., S.A. v. Precision Cutting Servs., Inc., 717 So. 2d 507, 511 (Fla. 1998) (citing Rini v. United Van Lines, Inc., 104 F.3d 502, 503 (1st Cir. 1997)). It specifically provides that certain interstate carriers must "issue a receipt or bill of lading for property . . . receive[d] for transportation," and a carrier is held strictly "liable to the person entitled to recover under the receipt or bill of lading . . . for the actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 14706(a)(1); accord King Ocean Cent., 717 So. 2d at 511. The statute expressly recognizes the right of a shipper and carrier to limit the latter's liability to a stipulated value only if the value is "reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). The Carmack Amendment further permits a civil action to be brought against a "carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. § 14706(d)(2). Finally, the statute includes a "savings clause" stating that

---

1. 49 U.S.C. § 11706, et seq.

"[e]xcept as otherwise provided in this part, the remedies provided under this part are in addition to remedies existing under another law or common law." 49 U.S.C. § 15103; accord Multiflex Sys., Inc. v. Reed Transport Serv., Inc., 2010 WL 2363337, at *2 (M.D. Fla. June 11, 2010) ("The savings clause preserves rights and remedies not inconsistent with the rules and regulations prescribed by the provision of this act.") (quoting Smith v. United Parcel Serv., 296 F.3d 1244, 1247 (11th Cir. 2002)).

Congress enacted the Carmack Amendment to achieve uniformity in rules governing liability arising from interstate shipment contracts. UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1285 (11th Cir. 2014); King Ocean Cent., 717 So. 2d at 511; see also Adams Express Co. v. Croninger, 226 U.S. 491, 505 (1913) (explaining that a carrier could be liable for loss of or damage to transported property under the decree of one tribunal while another carrier, who was sued based on the same or substantially similar circumstances, could escape liability in another tribunal). Consistent with this goal, it became well-established that the statute "broadly 'preempts state law claims arising from failures in the transportation and delivery of goods.' " Casamassa v. Walton P. Davis Co., Inc., 2008 WL 879412, at *3 (M.D. Fla. Mar. 28, 2008) (quoting Smith, 296 F.3d at 1246). However, courts nationwide have also accepted the notion "that situations may exist in which the Carmack Amendment does not preempt all state

and common law claims." <u>Smith</u>, 296 F.3d at 1248-49 (citing <u>Gooch v. Or. Short Line R.R. Co.</u>, 258 U.S. 22 (1922); <u>Chi. Rock Island & Pac. Ry. Co. v. Maucher</u>, 248 U.S. 359 (1919); <u>Morris v. Covan Worldwide Moving, Inc.</u>, 144 F.3d 377, 383 (5th Cir. 1998); <u>Reeves v. Mayflower Transit, Inc.</u>, 87 F. Supp. 2d 1251, 1254 (M.D. Ala. 1999)); <u>see also</u> <u>Gordon v. United Van Lines, Inc.</u>, 130 F.3d 282, 289 (7th Cir. 1997) ("Nevertheless, not every claim even remotely associated with the transfer of goods from one place to another is necessarily a claim for damages to the shippers' goods."); <u>Schwartz v. Nat'l Van Lines, Inc.</u>, 2004 WL 1166632, at *5 (N.D. Ill. May 21, 2004). Nationwide, courts have not settled on a single test to determine whether such claims escape the amendment's preemptive ambit. The conflict extends to Florida's district courts of appeal.

Conflict in Florida Caselaw

Caselaw in this state embraces two competing tests for assessing Carmack Amendment preemption: one is based on alleged harm to the shipper, and the other focuses on the carrier's conduct. We expound upon each test below. However, as also discussed, neither of them need be adopted as the sole standard determining whether common law and state law claims are preempted by the federal statute.

In <u>Braid Sales</u>, the certified conflict case, an owner of machinery that was damaged during shipment by an interstate carrier of goods brought action in circuit court against the carrier. The complaint alleged a breach of an oral contract in

which the carrier promised to pay the full cost of repairing the machinery. Braid Sales, 838 So. 2d at 591. The Fifth District ultimately determined that the Carmack Amendment did not preempt the claim. Id. at 593. It ruled "that liability arising from separate harms [is] not preempted." Id. (citing Rini, 104 F.3d at 505-06). It further noted that "[n]either the Carmack Amendment nor public policy support a carrier's attempt to evade the legal responsibilities voluntarily assumed by entry into an independent contract." Id. (footnote omitted). As such, the Fifth District concluded that the breach "of an alleged oral contract between the parties for payment of repairs, entered into after the shipment was completed, constitutes a separate harm which is independent from the loss or damage to goods." Id.

In Mlinar, the case on review, the Fourth District acknowledged the existence of two competing standards for evaluating claims of Carmack Amendment preemption, including the "separate harm" or "separate injury" test applied in Braid Sales and a "separate conduct" test. Mlinar, 129 So. 3d at 410 (citing Morris, 144 F.3d at 382; Braid Sales, 838 So. 2d at 593). The court opined that the latter test—that is, "separate and distinct conduct rather than injury"—is the appropriate standard. Id. Applying that test, the Fourth District concluded that each of Mlinar's claims, which arose from the intentional removal of her oil paintings from packaging being shipped by UPS and their subsequent sales, were in fact preempted by the Carmack Amendment. Id. at 410-11. Accordingly, the

Fourth District affirmed the dismissal of the state law claims. Id. at 411. However, it certified conflict "[t]o the extent this opinion conflicts with the Fifth District's decision in Braid Sales." Mlinar, 129 So. 3d at 411-12.

Because the Fourth and Fifth Districts applied different tests in evaluating whether the claims before each court were preempted under federal law, the preliminary question before this Court is whether Florida courts must apply the "separate harm" test or the "separate conduct" test for purposes of determining whether common law and state law claims, including Mlinar's, are preempted by the Carmack Amendment. This issue presents a pure question of law subject to de novo review. See McKenzie Check Advance of Fla., LLC v. Betts, 112 So. 3d 1176, 1180 (Fla. 2013).

On the one hand, a test focusing on separate harm corresponds with the Carmack Amendment's plain language. The amendment states in pertinent part that a carrier is liable to a shipper for "actual loss or injury to the property" transported by it. 49 U.S.C. § 14706(a)(1). And, in the context of Carmack Amendment preemption, the word "harm" has been loosely used by various courts as interchangeable for the word "injury." Compare Rini, 104 F.3d at 506 (using "separate harms"), and Gordon, 130 F.3d at 289 (using "separate and independently actionable harms" (citing N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc., 89 F.3d 452, 456 (7th Cir. 1996))); with Morris, 144 F.3d at 382 (using

phrase "injuries separate and apart") (citing Rini, 104 F.3d at 506-07; Gordon, 130 F.3d at 289). Thus, the "separate harm" language closely reflects the actual language found in the Carmack Amendment. See McGinn v. JB Hunt Transp., Inc., 2012 WL 124401, at *3 (E.D. Wis. Jan. 17, 2012) (comparing tests based on harm and conduct, and noting that "the plain language of the statute limits the carrier's liability to the 'actual loss or injury to the property' damaged en route").

Notwithstanding, caselaw also indicates that a claim's nature may warrant the consideration of conduct underlying the alleged harm in order to verify that the liability asserted is indeed separate from the loss of or damage to goods. For example, in Gordon, the Seventh Federal Circuit held that Carmack Amendment preemption did not apply to a shipper's intentional infliction of emotional distress claim arising from a carrier's failure to deliver family memorabilia and heirlooms, followed by a four-month-long course of deception concerning the non-delivery. In reaching its conclusion, the circuit court acknowledged the First Federal Circuit's determination that such claims allege a harm to the shipper that is independent from the loss of or damage to goods. Gordon, 130 F.3d at 282, 289 (citing Rini, 104 F.3d at 506).

The Ninth Federal Circuit later critiqued the Gordon decision, explaining:

> Although the Seventh Circuit adopted the First Circuit's language focusing on harm, the Seventh Circuit's holding in Gordon was actually motivated by the defendant's conduct. [Gordon, 130 F.3d] at 283, 290. The Seventh Circuit was troubled by the fact that

the defendant lied to the plaintiff and engaged in a "four-month course of deception pertaining to [their] nondelivery." Id. Indeed, a rule focusing on harm to the exclusion of conduct would contradict the Supreme Court's statement that "[t]he words of the statute 'are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination.' " Se. Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29 (1936) (per curiam); see also Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196 (1916).

White v. Mayflower Transit, L.L.C., 543 F.3d 581, 585-86 (9th Cir. 2008).

According to the White court, the Seventh Circuit's finding of harm, independent of the loss of or damage to the goods transported, was based on its consideration of the conduct from which the alleged harm flowed. Accord Glass v. Crimmins Transfer Co., 299 F. Supp. 2d 878, 887 (C.D. Ill. 2004) (making similar observation that intentional infliction of emotional distress claim asserted in Gordon survived federal preemption because the alleged emotional distress arose from "overt conduct," and not simply from loss of or damage to property). Stated differently, a finding of separate conduct was part and parcel of a finding of separate harm. See Clean Harbors Recycling Servs. Ctr. of Chi., LLC v. Harold Marcus Ltd., 2013 WL 1329532, at *4 (D. Mass. Mar. 29, 2013) ("The dispute about payment for contract cleanup services thus involves conduct and resulting harms 'distinct from the contract of carriage.' ") (quoting Gordon, 130 F.3d at 290).

Notably, the Ninth Federal Circuit was not suggesting that the Gordon decision utilized a standard focusing purely on conduct. Rather, it recognized that the decision placed considerable emphasis on the carrier's conduct—in addition to identifying the resulting harm. This observation is particularly persuasive given the circuit court's explicit rejection of "a rule focusing on harm to the exclusion of conduct." White, 543 F.3d at 585-86. In fact, various courts have found it prudent either to adopt or address both tests for purposes of evaluating Carmack Amendment preemption. See, e.g., Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc., 762 F.3d 332, 336 n.4 (3d Cir. 2014) (holding shipper's state law claims did not fall within "peripheral set of state and common law causes of action that are not preempted by the Carmack Amendment," and citing for support cases analyzing both "separate conduct" and "separate harm" tests); Clean Harbors Recycling, 2013 WL 1329532, at *4 (reviewing claims for "conduct and resulting harms"); Kashala v. Mobility Servs. Int'l, LLC, 2009 WL 2144289, at *9 (D. Mass. May 12, 2009) ("None of the facts alleged by Mr. Kashala give rise to conduct or harm sufficiently separate and distinct from the shipment and claims process as to warrant exemption from the preemptive reach of the Carmack Amendment.") (citing Rini, 104 F.3d at 506); Brightstar Int'l Corp. v. Minuteman Int'l, 2011 WL 4686432, at *3 (N.D. Ill. Oct. 4, 2011) ("Although a shipper may be liable to a carrier in tort due to the breach of

a duty implied under the Carmack Amendment, such liability must arise from conduct that is separate and distinct from the loss of the goods or be due to incidental harms apart from the harm to the goods shipped.") (citing Gordon, 130 F.3d at 284); Smallwood v. Allied Pickfords, LLC, 2009 WL 3247180, at *9-10 (S.D. Cal. Sept. 29, 2009) (rejecting plaintiff's argument that his state law causes of action for negligence and breach of contract alleged "separate and independent harms" distinct from the loss of or damage to his goods since both claims asserted conduct related to the interstate misdelivery of goods); see also Gordon, 130 F.3d at 289 ("[W]e too conclude that the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce.").

In light of the above, we see no compelling reason to adopt one test over the other as the exclusive standard for assessing Carmack Amendment preemption. We instead hold that a state law or common law claim against an interstate carrier of goods is generally preempted by the statute unless the claim alleges conduct or harm that is separate and distinct from the loss of or damage to the goods transported. Bearing this principle in mind, we now turn to the claims asserted in the instant case.

Mlinar challenges the circuit court's order dismissing four state law claims against UPS and others, including conversion; profiting by criminal activity under section 817.02, Florida Statutes (2015); unauthorized publication of name or likeness under section 540.08, Florida Statutes (2015); and violating Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) under chapter 501, Florida Statutes (2015). This Court reviews an order granting a motion to dismiss de novo. Wallace v. Dean, 3 So. 3d 1035, 1045 (Fla. 2009). Such review must be confined to the four corners of the complaint. Blue Supply Corp. v. Novos Electro Mechanical, Inc., 990 So. 2d 1157, 1158 (Fla. 3d DCA 2008) (citing Pizzi v. Cent. Bank & Trust Co., 250 So. 2d 895 (Fla. 1971)). The "allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff." Wallace, 3 So. 3d at 1042-43 (quoting Ralph v. City of Daytona Beach, 471 So. 2d 1, 2 (Fla. 1983)).

UPS contends that the Carmack Amendment preempts the state law causes of action in this case because they "stemmed from UPS's loss of Mlinar's package." We disagree. Regarding the conversion, criminal activity, and FDUTPA claims, the operative complaint alleges that "UPS selectively located the [paintings] based on their nature, probable worth, and lack of insurance"; "sent the paintings to [Cargo Largo] for some as of yet undisclosed consideration exceeding

the $100.00 liability coverage provided for all shipments"; and "utilized the information on the back of the painting including [Mlinar's] name to catalogue, sell and/or distribute the item to" Cargo Largo. The complaint further alleges UPS, Cargo Largo, and Pak Mail systematically appropriated the paintings "by falsely impersonating and/or representing themselves as part of a shipping enterprise rather than a fencing organization." Lastly, the complaint identifies policies, acts, and practices sanctioned by UPS that "were intended to result and did result in the payment of UPS rates under false pretenses and through misleading billing practices." And, "[b]ased upon its refusal to accept consumer information, UPS is virtually guaranteed that it will never pay nearly as much to that servicer as it receives from the servicer."

The above allegations illustrate a course of criminal conduct by UPS and its cohorts that bears, at best, only a tangential relationship to the interstate shipment process and, more specifically, a carrier's contractual obligation to transport goods. As Mlinar accurately points out, this is not a case where "the paintings were stolen by a rogue UPS employee or even by a trespasser." Cf. Olympian Worldwide Moving & Storage Inc. v. Showalter, 2013 WL 3875299 (D. Ariz. July 26, 2013) (granting motion to dismiss state law claims alleging that common carrier's employees stole property shipped by plaintiffs). Rather, it is the common carrier itself that has adopted or ratified the unscrupulous practices at issue. To expand

Carmack Amendment preemption to cases in which a plaintiff seeks to hold a carrier liable not for a negligent yet good-faith loss of goods, but instead for larcenous misconduct by the carrier that was intended to and in fact resulted in the separation of goods from their owner is repugnant to the purpose behind the statute's enactment. Thus, we conclude that the conversion, criminal activity, and FDUPTA claims arise from conduct or harm that is independent from the loss of goods during the interstate shipment process.

Likewise, the claim of unauthorized publication of name or likeness also alleges separate and distinct conduct or harm. The complaint avers that, after receiving the paintings from UPS, Cargo Largo indicated to auction bidders that the subject paintings were originals from a professional artist and disclosed Mlinar's name. Anderson was aware that other individuals' properties had been misappropriated under circumstances similar to those alleged in this case. Additionally, Mlinar confirmed with Anderson that her paintings had been stolen. According to the complaint, Anderson nevertheless insisted that he intended to sell them at their appraised value and did in fact sell them on eBay despite Mlinar's objection to the sale. Anderson also detailed on the sale advertisements information about his conversation with Mlinar in order to authenticate the paintings' values and boost their sale prices. Cargo Largo's and Anderson's improper uses of Mlinar's prestige to resell her paintings after they were

misappropriated has nothing to do with the shipment process. As such, the Carmack Amendment cannot operate to insulate them from liability under statutory law.

UPS maintains that the dismissal of Mlinar's claims is consistent with the Carmack Amendment's purpose of providing uniformity of liability and remedy. The disposition Mlinar seeks today would undermine the clearly established protections afforded by the statute, UPS adds. As mentioned in passing, Congress enacted the Carmack Amendment "to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." McGinn, 2012 WL 124401, at *3 (citation omitted). To insist, however, that lawmakers also intended to allow a common carrier to break one law and shield itself from liability under the protections afforded by another is dubious. Moreover, UPS's position would perpetuate dishonesty by companies that hold themselves out to the public as providers of interstate shipment services and in which consumers entrust their property. It would also prompt consumers to lose confidence in common carriers, thereby discouraging future business in the interstate shipment market.

Neither the Carmack Amendment nor public policy supports UPS's attempt to evade liability arising not from the loss of property, but from its intentional

misconduct.  Accordingly, we conclude that Mlinar's state law causes of action are not preempted.

## CONCLUSION

For the foregoing reasons, we quash the Fourth District's decision in Mlinar to the extent it is inconsistent with this opinion.  We also remand this case for further proceedings.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

    Fourth District - Case No. 4D12-1332

    (Palm Beach County)

John Scarola, Mara Ritchie Poncy Hatfield, and Patrick Edward Quinlan of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, Florida; and Shannon M. Mahoney of the Law Offices of Shannon Mahoney, PA, West Palm Beach, Florida,

    for Petitioner

Evan Seth Gutwein of Hamilton, Miller & Birthisel LLP, Miami, Florida, and David Roy Heffernan of Kaire & Heffernan, LLC, Miami, Florida,

    for Respondent United Parcel Service, Inc.