# Supreme Court of Florida

_____

No. SC15-1805
_____

**ERIC GREEN,**
Petitioner,

vs.

**CALVIN COTTRELL, et al.,**
Respondents.

[November 10, 2016]

LABARGA, C.J.

Petitioner Eric Green seeks review of the decision of the First District Court of Appeal in Green v. Cottrell, 172 So. 3d 1009 (Fla. 1st DCA 2015), on the basis that it expressly and directly conflicts with Calhoun v. Nienhuis, 110 So. 3d 24 (Fla. 5th DCA 2013), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons discussed below, we quash the decision in Green and approve the holding in Calhoun, but not the analysis of the Fifth District in that case.

# FACTS AND PROCEDURAL HISTORY

On June 22, 2012, inmate Eric Green filed a pro se complaint against four employees of the Santa Rosa County Jail: a shift lieutenant, two deputies, and a sergeant who was assigned as a hearing officer to consider disciplinary reports. Green alleged that on June 22, 2008, he was attacked at the jail by two inmates. According to Green, all of the inmates housed in his dormitory were classified as extreme high risk due to their aggressive and violent tendencies. The complaint alleged that prior to the attack, Green informed the deputies that he was experiencing conflict with the two inmates, and the situation had escalated to threats. Green asked to be removed from the dormitory where the two inmates were housed and placed in protective custody. Green's complaint asserted that one of the inmates had recently been involved in an attack on another inmate which resulted in injury, and the attacked inmate had since been placed in protective custody. One deputy allegedly stated that Green should not be worried, but that he would arrange for Green to speak with the shift lieutenant. According to the complaint, when Green reiterated his concerns to the lieutenant, the lieutenant stated that there was only one confinement unit, which had limited bed space and no available room. The lieutenant also advised that he could not relocate Green to another dormitory.

When Green returned to the dormitory, one of the inmates accused him of "snitching." Upon hearing the accusation, the other inmate said that he was going to beat Green. Green returned to his cell and attempted to lock himself inside, but the lock was secured in the open position. According to the complaint, Green pleaded with one of the deputies to release the lock because the inmates were coming to attack him, but the deputy failed to do so. Green retrieved a homemade "shank," placed it in his waistband, and fled from the cell. At that point, the inmates allegedly attacked Green, while the same deputy appeared to watch. Once the fight ceased, one of the inmates quickly left the area, while Green proceeded to chase the other inmate. Several deputies then appeared, and Green was escorted to an interview room. A deputy searched Green and discovered the shank in his waistband. He was subsequently taken to a hospital for treatment of his injuries, which included stitches for a lip laceration. Upon his return to the jail, Green was placed in administrative confinement and given a disciplinary report for fighting. Two days later, the sergeant held a hearing on the disciplinary report, after which he sentenced Green to five days in disciplinary confinement.

Based upon the facts as alleged in the complaint, Green raised claims under Florida law of negligence and intentional infliction of emotional distress against the shift lieutenant and the two deputies. Green claimed that these jail employees had failed to exercise the reasonable care necessary to protect him from foreseeable

harm after they were placed on notice that the inmates had made threats against him. Green also raised federal law claims against all four jail employees. The complaint included the following statement with regard to the exhaustion of administrative remedies:

> The Plaintiff has exhausted his administrative remedies by use of the grievance procedure that was available to him at S.R.C.J. to try and correct the violations. However, the Plaintiff was transferred back to Florida State Prison on or about June 30, 2008. Therefore, he was unable to receive a response or submit his grievances to the next level. Accordingly, the grievance process is considered exhausted.

Green sought damages for both physical and emotional injury.

On June 24, 2014, the circuit court dismissed the complaint. The court concluded that Green's state law claims were time-barred under section 95.11(5)(g), Florida Statutes (2007), which provides a one-year time limit for "an action brought by or on behalf of a prisoner, as defined in s. 57.085, relating to the conditions of the prisoner's confinement." With regard to Green's federal law claims, the court noted that they were governed by the Prison Litigation Reform Act (PLRA), and exhaustion of administrative remedies is mandatory. The court concluded that Green's transfer from the jail to Florida State Prison was insufficient to absolve him of the exhaustion requirement:

> Here, Plaintiff's Complaint shows he filed a grievance prior to being transferred. But, it also shows that he did nothing to follow up or to appeal any lack of answer or negative decision. . . . Accordingly, the four corners of the Complaint itself show GREEN failed to exhaust his administrative remedies. Where an inmate's

failure to dismiss [sic] is "readily apparent from Plaintiff's pleadings and/or attachments," sua sponte dismissal of the action without prejudice is appropriate. Here, Plaintiff could have finished his administrative remedies anytime between the occurrence of the fight with two other inmates on June 22, 2008; and, the mailing of his complaint four years later on June 22, 2012. If he had received a negative response or no response at all, he had an appeal mechanism available to him by following up with the Santa Rosa County Jail. But, his pleading admits he did nothing, but simply "consider[] [his grievance] exhausted." Accordingly, dismissal of all claims is not only warranted, but required.

(Citations and parentheticals omitted.)

On appeal, Green challenged three of the circuit court's determinations: (1) that he failed to exhaust administrative remedies prior to bringing the federal law claims; (2) that the failure to exhaust was apparent from the face of the complaint; and (3) that the state law claims were barred by the one-year statute of limitations period in section 95.11(5)(g). See Green, 172 So. 3d at 1010. The First District Court of Appeal affirmed the first two challenges without discussion. Id.

The district court also affirmed the circuit court's holding that the one-year statute of limitations in section 95.11(5)(g) governed Green's state law claims and rejected his assertion that the four-year time limit in section 768.28(14), Florida Statutes (2007), was applicable instead. Id. at 1010-11. The district court noted that section 768.28, enacted in 1973, applies to "[e]very claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section . . . ." Id. at 1011 (quoting § 768.28(14), Fla.

Stat.). Conversely, section 95.11(5)(g), which was enacted in 1996, governs actions brought by or on behalf of a prisoner that relate to conditions of the prisoner's confinement. The First District concluded that the more recently enacted section 95.11(5)(g) was the more specific statute, and controlled over the earlier enacted section 768.28(14). Id. The district court disagreed with Calhoun, 110 So. 3d 24, in which the Fifth District Court of Appeal held that the four-year statute of limitations in section 768.28(14) applied to a negligence action filed against a sheriff. See Green, 172 So. 3d at 1010.

We granted review of Green based upon conflict with Calhoun.

## ANALYSIS

### Statute of Limitations Claim

The first issue presented by this case is which statute of limitations governs the state law claims raised in Green's complaint. Questions of statutory interpretation are matters of law that are reviewed de novo. See Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013); see also Hamilton v. Tanner, 962 So. 2d 997, 1000 (Fla. 2d DCA 2007) ("A legal issue surrounding a statute of limitations question is an issue of law subject to de novo review."). The standard of review for the dismissal of a complaint is also de novo. See Mlinar v. United Parcel Serv., Inc., 186 So. 3d 997, 1004 (Fla. 2016).

The first statute, titled "Limitations other than for the recovery of real property," provides:

> Actions other than for recovery of real property shall be commenced as follows:
>
>     . . . .
>
> (5)  WITHIN ONE YEAR.—
>
>     . . . .
>
>     (g)  Except for actions described in subsection (8) [actions challenging correctional disciplinary proceedings], an action brought by or on behalf of a prisoner, as defined in s. 57.085, relating to the conditions of the prisoner's confinement.

§ 95.11(5)(g), Fla. Stat.  By its plain terms, section 95.11(5)(g) applies solely to prisoners, as that term is statutorily defined,[1] and then only to actions that relate to conditions of their confinement.  If either of these qualifications is not met, section 95.11(5)(g) does not apply.

The second statute provides, with certain exceptions not applicable here, a four-year limitations period for actions against government entities where sovereign immunity has been waived.  See § 768.28(14), Fla. Stat.  The limited waiver of sovereign immunity for tort actions is provided in section 768.28:

> (1) In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.  Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money

---

1. Section 57.085(1), Florida Statutes (2016), defines a prisoner as "a person who has been convicted of a crime and is incarcerated for that crime or who is being held in custody pending extradition or sentencing."

> damages against the state or its agencies or subdivisions for injury or loss of property, <u>personal injury</u>, or death <u>caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment</u> under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.

(Emphasis added.) Florida counties are encompassed within this statute. <u>See</u> § 768.28(2), Fla. Stat. Green alleges that while he was housed at the Santa Rosa County Jail, he suffered physical injury and emotional distress due to the failure of a shift lieutenant and two deputies to protect him from an attack. Therefore, unless the state law claims raised by Green fall under section 95.11(5)(g), the four-year statute of limitations in section 768.28(14) is applicable to his action.

There is no question that Green satisfies the first condition of section 95.11(5)(g) because he is a prisoner as that term is defined in section 57.085(1). However, whether the alleged attack at the jail constituted a condition of Green's confinement is not as clear. We have explained, "[i]t is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." <u>Hechtman v. Nations Title Ins. of New York</u>, 840 So. 2d 993, 996 (Fla. 2003). An argument can be made that every single thing that happens to a prisoner within the confines of the prison or jail walls qualifies as a condition of confinement. However, were that the case, there would

- 8 -

be no need to qualify prisoner actions with the language "relating to the conditions of . . . confinement." The one-year statute of limitations in section 95.11(5)(g) could simply be applied to all actions "brought by or on behalf of a prisoner."[2] Therefore, to ensure that the phrase "conditions of the prisoner's confinement" does not constitute mere surplusage, we must determine the meaning of this language. As we have often stated, "[l]egislative intent is the polestar that guides a court's statutory construction analysis." Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003). To assist us, we turn to the chapter law that enacted the statute of limitations.

The preamble to this chapter law reflects that section 95.11(5)(g) was enacted to curb frivolous and malicious filings by prisoners:

> WHEREAS, frivolous inmate lawsuits congest civil court dockets and delay the administration of justice for all litigants, and
>
> WHEREAS, each year self-represented indigent inmates in Florida's jails and prisons file an ever-increasing number of frivolous lawsuits at public expense against public officers and employees, and

---

2. We note that section 95.11(5)(f), Florida Statutes, which was enacted under the same chapter law as section 95.11(5)(g), places a one-year statute of limitations on all extraordinary writ petitions filed by or on behalf of a prisoner, except for petitions challenging a criminal conviction. See ch. 96-106, § 4, at 96, Laws of Fla. Thus, within the same chapter law, the Florida Legislature applied a statute of limitations to an entire group of prisoner filings. By making subsection (5)(g) applicable only to those actions that challenge "conditions of . . . confinement," it is evident that the Legislature did not intend to impose a blanket one-year statute of limitations on all prisoner actions.

WHEREAS, state and local governments spend millions of dollars each year processing, serving, and defending <u>frivolous</u> lawsuits filed by self-represented indigent inmates, and

WHEREAS, the overwhelming majority of civil lawsuits filed by self-represented indigent inmates are <u>frivolous</u> and malicious actions intended to embarrass or harass public officers and employees, and

WHEREAS, under current law <u>frivolous</u> inmate lawsuits are dismissible by the courts only after considerable expenditure of precious taxpayer and judicial resources . . .

Ch. 96-106, at 92-93, Laws of Fla. (emphasis added). Frivolous is defined as "Lacking a legal basis or legal merit; not serious; not reasonably purposeful." <u>Black's Law Dictionary</u> 739 (9th ed. 2009). A Senate Staff Analysis and Economic Impact Statement provided examples of the types of claims that spearheaded the legislative action:

Some lawsuits that have been recently publicized by the Florida Attorney General include inmates who sued because they wanted to be served more than two pancakes and fresh milk rather than reconstituted milk, one inmate found gristle in his turkey and sued, and another inmate sued because he had to eat off paper plates.

Fla. S. Comm. on Crim. Justice, SB 8 (1995) Senate Staff Analysis and Economic Impact Statement on Committee Substitute for SB 8, at 2 (Sept. 27, 1995).

Neither the definition of frivolous as that term is commonly understood, nor the examples cited by the staff analysis as a basis for the need to curb frivolous prisoner lawsuits, would seem to encompass the situation where a prisoner asserts he was physically injured due to the negligent or wrongful acts or omissions of

- 10 -

prison/jail employees. We cannot envision that the Florida Legislature, when it enacted chapter 96-106 with the goal of limiting frivolous or malicious lawsuits, also intended to lessen the ability of a prisoner to seek legal redress for physical injuries that were allegedly suffered at the hands of those who were charged with his custody and care. Such a claim, on its face, clearly is not of the pancake or paper plate frivolous filing variety, and nothing in the preamble to chapter 96-106 suggests that the statutory changes were intended to limit apparently legitimate claims by prisoners. Therefore, we conclude that the term "conditions of the prisoner's confinement" in section 95.11(5)(g) does not encompass the situation where a prisoner alleges that he suffered actual physical injury due to the negligent or wrongful act or omission of an employee of a government entity.

Other provisions of the chapter law that enacted section 95.11(5)(g) support our conclusion. For example, the law also created section 57.085, Florida Statutes (2016), which addresses the deferral of prepayment of court costs and fees for indigent prisoners. See ch. 96-106, § 2, at 93-95, Laws of Fla. Section 57.085(6) provides that before an indigent prisoner may initiate a judicial proceeding, "the court must review the prisoner's claim to determine whether it is legally sufficient to state a cause of action for which the court has jurisdiction and may grant relief." Under this subsection, a court is required to dismiss all or part of a claim which:

> (a) Fails to state a claim for which relief may be granted;

- 11 -

(b)  Seeks monetary relief from a defendant who is immune from such relief;

(c)  <u>Seeks relief for mental or emotional injury where there has been no related allegation of a physical injury</u>; or

(d)  Is frivolous, malicious, or reasonably appears to be intended to harass one or more named defendants.

§ 57.085(6), Fla. Stat. (emphasis added).  Thus, the Legislature chose to treat claims of physical injury differently from claims where a prisoner alleges mental or emotional injury alone, in that they are not subject to mandatory dismissal.

Based upon the foregoing, we hold that where, as here, a prisoner files an action alleging that he suffered physical injury due to the negligent or wrongful acts or omissions of the employees of a government entity, the one-year statute of limitations period in section 95.11(5)(g)—a provision enacted as part of a chapter law that was intended to curb <u>frivolous</u> filings by prisoners—does not apply. Instead, the four-year statute of limitations in section 768.28(14) governs. Accordingly, we conclude that the First District erroneously affirmed the dismissal of Green's state law claims as untimely.

**Calhoun v. Nienhuis**

Unlike the First District in <u>Green</u>, the Fifth District in <u>Calhoun</u> held that the four-year statute of limitations in section 768.28(14) applied to the plaintiff's negligence action against a sheriff rather than the one-year time limit in section 95.11(5)(g).  110 So. 3d at 26.  However, despite this apparent conflict with the decision below, <u>Calhoun</u> is factually distinguishable.  The Fifth District expressly

- 12 -

noted that the plaintiff in <u>Calhoun</u> was a pretrial detainee. <u>Id.</u> at 25. As previously discussed, section 95.11(5)(g) only applies to prisoners as that term is defined in section 57.085. <u>See</u> § 57.085(1), Fla. Stat. (defining a prisoner as "a person who has been convicted of a crime and is incarcerated for that crime or who is being held in custody pending extradition or sentencing"). Because the plaintiff in <u>Calhoun</u> presumably had not yet been convicted of a crime, she could not be a prisoner pursuant to section 57.085(1), and the one-year statute of limitations in section 95.11(5)(g) would not apply to her action. Instead, the four-year statute of limitations in section 768.28(14) governed. Thus, the Fifth District in <u>Calhoun</u> reached the right conclusion as to which statute of limitations applied to the action in that case, but for the incorrect reason. Therefore, we disapprove the analysis of the Fifth District without further discussion.

## Exhaustion of Remedies Claim

Green additionally contends that the circuit court erred when it dismissed his federal law claims for failure to exhaust administrative remedies. Although the First District affirmed the dismissal of these claims without elaboration, once this Court accepts jurisdiction over a case to resolve a legal issue in conflict, it may consider any other issue that is properly raised and argued. <u>See</u> <u>Savoie v. State</u>, 422 So. 2d 308, 310 (Fla. 1982). As previously discussed, the standard of review for the dismissal of a complaint is de novo. <u>See</u> <u>Mlinar</u>, 186 So. 3d at 1004.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2012). The United States Supreme Court has explained that under the PLRA:

> Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed . . . a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process.

Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citation omitted). Further, the Supreme Court has noted that in cases where state prisoners raise federal law claims, it is the correctional facility's grievance process that must be exhausted. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). The Supreme Court has also held that failure to exhaust is an affirmative defense under the PLRA, and prisoners are not required to plead or demonstrate exhaustion in their complaints. Id. at 216; see also Bailey v. Fla. Dep't of Corr., 958 So. 2d 986, 987 (Fla. 4th DCA 2007) (relying on Bock in a prisoner's section 1983 action to conclude that

- 14 -

the failure to exhaust is an affirmative defense to be pled by the defendant, and the prisoner had no obligation to plead exhaustion).

Thus, under the Supreme Court's interpretation of the PLRA, Green was not required to plead exhaustion of administrative remedies at the Santa Rosa County Jail. The fact that he pled exhaustion did not place the burden on him to demonstrate that he had actually exhausted whatever administrative remedies had been implemented by the jail. Rather, the burden of proof with regard to establishing an affirmative defense lies with a defendant; here, the jail employees. See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1096 (Fla. 2010). Florida district courts have reversed dismissals for failure to exhaust where the prisoner alleged that administrative remedies had been exhausted. See Miller v. Dep't of Corr., 172 So. 3d 574, 574 (Fla. 1st DCA 2015) (reversing dismissal of petition for writ of mandamus where prisoner asserted that "he had 'exhausted all available avenues of administrative review via the inmate grievance procedure,' and . . . his exhaustion of administrative remedies [was] reflected in 'inmate appeal grievance log number 13-6-15500' "); Bailey, 958 So. 2d at 987-88 (reversing dismissal of complaint where the prisoner alleged that he had "exhausted all administrative remedies").

Further, issues of fact can arise as to whether there were administrative remedies available to a prisoner, and if so, whether he exhausted them. The district

- 15 -

courts have reversed dismissals for failure to exhaust administrative remedies where factual questions as to such matters existed. For example, in <u>Owens v. Crews</u>, 131 So. 3d 799, 799-800 (Fla. 1st DCA 2013), the First District reversed a circuit court's dismissal for failure to exhaust administrative remedies where "a disputed issue of fact exist[ed] concerning whether Department officials timely provided the responses to [Owens], and the court did not take competent, substantial evidence to reach its determination that the door to review in the circuit court is closed." <u>See also</u> <u>Adlington v. Mosley</u>, 757 So. 2d 573, 574 (Fla. 4th DCA 2000) (reversing dismissal for failure to exhaust administrative remedies and remanding for a determination as to whether there was an inmate grievance procedure available to the prisoner, who was housed at a privately run correctional facility).

The review of an order granting a motion to dismiss is confined to the four corners of the complaint. <u>See</u> <u>Mlinar</u>, 186 So. 3d at 1004.[3] Further, "[t]he 'allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff.' " <u>Id.</u> (quoting <u>Wallace v. Dean</u>, 3 So. 3d 1035, 1042-43 (Fla. 2009)). Here, the circuit court recognized that

---

3. It is not clear whether a motion to dismiss was made with regard to the federal law claims. In his motion for rehearing of the circuit court's order, Green referenced an oral motion to dismiss by the jail employees. However, the answer brief filed with this Court suggests that the circuit court's dismissal was sua sponte.

it was bound by the "four corners" rule; however, the court then violated this rule by making assumptions about what administrative remedies were available to Green after his transfer from the jail to a state correctional facility approximately eight days after the alleged attack. The circuit court referenced Green's statement that, because of his transfer, he "was unable to receive a response or submit his grievance to the next level." Instead of accepting this allegation as true, as required by Mlinar, 186 So. 3d at 1004, the circuit court assumed that (1) the transfer of Green did not extinguish his grievance or render it moot; (2) Green had an available mechanism to follow up on the grievance when he did not receive a response from the jail; and (3) even if he had received an adverse decision, the jail had an appeal process available for inmates who filed grievances, but are no longer housed at the facility. Thus, factual issues remain as to what administrative procedures were in place at the Santa Rosa County Jail in 2008 and to what extent Green was capable of complying with them once he was transferred to a different facility.

Accordingly, we hold that the circuit court erroneously dismissed Green's federal law claims. Although its conclusion that Green had not exhausted administrative remedies may ultimately be correct, the burden fell on the jail employees to demonstrate that he failed to do so. See Bock, 549 U.S. at 216 (under the PLRA, failure to exhaust is an affirmative defense, and prisoners are not

required to demonstrate exhaustion in their complaints); Custer, 62 So. 3d at 1096 (stating that the defendant has the burden of proving an affirmative defense). Therefore, the First District's affirmance of the circuit court's dismissal was similarly in error.

## CONCLUSION

Based upon the foregoing, the decision of the First District Court of Appeal in Green is quashed, and this matter is remanded to the district court for further proceedings consistent with this opinion. We disapprove the reasoning of the Fifth District Court of Appeal in Calhoun, but not the court's ultimate holding that the four-year statute of limitations in section 768.28(14) applied to the action in that case.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

Petitioner's suit arises from alleged injuries received from other inmates housed in the same dormitory, who Petitioner believed were considered as high risk because of their aggressive and violent tendencies. His state law claims alleging negligent housing assignment and emotional distress relate to the

- 18 -

conditions of his confinement and are, therefore, subject to the one-year statute of limitation in section 95.11(5)(g), Florida Statutes. However, his allegations of personnel intentionally failing to act during the altercation in violation of the constitution relate to his federal law claims. I agree with the majority that Petitioner's federal law claims should not have been dismissed.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

     First District - Case No. 1D14-4052

     (Santa Rosa County)

Charles Morris Auslander, John Granville Crabtree, and Brian Carson Tackenberg of Crabtree & Auslander, P.A., Key Biscayne, Florida,

     for Petitioner

Carl Raymond Peterson, Jr. of Jolly, Peterson & Truckenbrod, P.A., Tallahassee, Florida,

     for Respondents Sergeant D. Bryant, Danny E. Cook and Calvin Cottrell